# KEMP *v.* BOARD OF MEDICAL SUPERVISORS.

Physicians and Surgeons; Board of Medical Supervisors; Revocation of Licenses; Penalties and Forfeitures; Limitation of Actions; Moral Turpitude.

1. The provision of the Act of Congress of June 3, 1896 (29 Stat. at L. 198, chap. 313), which permits the Board of Medical Supervisors of this District, after a hearing, to revoke the license of a physician who has been convicted of a crime involving moral turpitude, is valid and constitutional. (Citing *Czarra* v. *Medical Supers.* 25 App. D. C. 443.)

2. The action of the Board of Medical Supervisors of this District in revoking the license of a physician is not invalidated by the fact that the complaint against him was not formulated by the board, but was filed with the board by the executive committee of the Medical Society of the District. (Construing Act of Congress of June 3, 1896 (29 Stat. at L. 198, chap. 313.)

---

Note.—For authorities discussing the question of license to engage in a profession or occupation as creating a vested right to continue in same, see note in 8 L.R.A.(N.S.) 1272.

As to grounds for revocation of physician's license, see note in 8 L.R.A. (N.S.) 585.

3. The revocation of a license to practise medicine is in the nature of a remedial measure for the protection of the public, and is not a penalty or forfeiture.

4. The Statute of Limitations only runs from the final act or determination of the action which is invoked as a bar to subsequent proceedings, such as the entry of a final judgment upon the mandate of an appellate court in such action.

5. The provision of the Act of Congress of June 3, 1896 (29 Stat. at L. 198, chap. 313), that the Board of Medical Supervisors may issue a new license without examination to a physician whose license it has revoked, at any time within two years after revocation, does not bar a proceeding before the board to revoke the license of a physician who had been convicted of a crime involving moral turpitude, where the proceeding before the board was instituted more than two years after affirmance of such conviction; nor is such a proceeding barred by sec. 1265, D. C. Code (31 Stat. at L. 1389, chap. 854) providing that actions to enforce a statutory penalty or forfeiture can only be maintained within one year after the cause of action accrues; or by the fact that more than three years elapsed between the date of the physician's conviction in the trial court and the date of the commencement of the proceeding against him before the Board of Medical Supervisors.

6. The violation of sec. 211 of the Penal Code (35 Stat. at L. 1129, chap. 321, Comp. Stat. 1916, sec. 10,381) by the sending through the mails of a letter giving information as to where and by whom, and by what means, an abortion may be performed and procured, is a crime involving moral turpitude, within the meaning of the Act of Congress of June 3, 1896 (29 Stat. at L. 198, chap. 313) permitting the Board of Medical Supervisors of this District to revoke the license of a physician who has been convicted of such a crime, and it is immaterial whether the commission of such a crime is a felony or a misdemeanor.

No. 2976.  Submitted January 5, 1917.  Decided March 6, 1917.

HEARING on an appeal by the respondent, a physician, from an order of the Board of Medical Supervisors of the District of Columbia, revoking his license.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellant, Thomas June Kemp, on March 24, 1913, was convicted in the supreme court of the District of Columbia of

sending through the mails "a certain letter and notice giving information, and intending to give information, where and by whom acts and operations for the producing and procuring of abortion would be done and performed, and how and by what means abortion could be produced," in violation of sec. 211 of the United States Criminal Code [35 Stat. at L. 1129, chap. 321, Comp. Stat. 1916, sec. 10,381]. The conviction was affirmed by this court March 2, 1914. *Kemp* v. *United States,* 41 App. D. C. 539, 51 L.R.A.(N.S.) 825. Appellant was sentenced to the penitentiary for a term of two years. The sentence, however, was commuted by the President to a fine of $500.

On April 3, 1916, a complaint was filed by a majority of the executive committee of the medical society of the District of Columbia with appellee, the Board of Medical Supervisors of the District of Columbia, charging appellant, a licentiate of said board, with having been convicted of a crime involving moral turpitude, and requesting an investigation and revocation of appellant's license to practise medicine in this District. A full hearing was had, and on May 29, 1916, an order was entered by said board revoking appellant's license, from which this appeal was taken.

This proceeding was had under the provisions of the Act of Congress of June 3, 1896 (29 Stat. at L. 198, chap. 313), entitled, "An Act to Regulate the Practice of Medicine and Surgery, to License Physicians and Surgeons, and to Punish Persons Violating the Provisions Thereof in the District of Columbia." Section 10 of the act provides "that the board of medical supervisors of the District of Columbia may, by a vote of four members, refuse to grant or may revoke a license, and may cause the name of any person to be removed from the record of the supreme court of the District of Columbia and from the register of the health office for any of the following causes, to wit: The employment of fraud or deception in passing the examinations provided for in this act, chronic inebriety, the practice of criminal abortion, conviction of crime involving moral tur-

pitude, or of unprofessional or dishonorable conduct. In complaints under this section the accused shall be furnished with a copy of the complaint and given a hearing before said board in person or by attorney, and witnesses may be heard for and on behalf of the accused, and for and on behalf of the said board. Appeal from the decision of said board may be taken to the court of appeals of the District of Columbia, and the decision of said court shall be final. Said board may at any time within two years from the refusal or revocation of a license, or the cancelation of registration under this section, by a vote of four members, issue, without examination, a new license to the person so affected, restoring to him or her all the rights and privileges of which he or she had been deprived by said board."

*Mr. Henry G. Davis* and *Mr. Rice Hooe,* for the appellant:

1. The Act of Congress of June 3, 1896, in the particular involved, is unconstitutional and void, for that it makes the Board of Medical Supervisors both accuser and judge of the licentiate affected.

2. Assuming the constitutionality of the act in the particular mentioned, any charge against a licentiate thereunder can be made only by or on behalf of the board itself, and not by any other person or body.

3. The Board of Medical Supervisors was estopped either to prosecute or to entertain the charge against appellant.

4. The prosecution of appellant upon the charge against him is barred by limitation of time. U. S. Rev. Stat. Secs. 1043, 1044, 1046; Code, sec. 1265; *Czarra* v. *Medical Supervisors,* 25 App. D. C. 443; *Bell* v. *Morrison,* 1 Pet. 351; *Campbell* v. *Haverhill,* 151 U. S. 610.

5. The crime of which appellant was convicted is not one involving moral turpitude. *Harvey* v. *United States,* 126 Fed. 357; *United States* v. *Harmon,* 45 Fed. 414; *Rosen* v. *United States,* 161 U. S. 29, 41, 42.

*Mr. Frederick A. Fenning,* and *Mr. Walter B. Guy,* for the appellee, in their brief cited:

*Balducchi* v. *Goodlett,* 145 S. W. 325; *Bours* v. *United States,* 229 U. S. 964; *Bradley* v. *Fisher,* 7 D. C. 32; *Buller* v. *Butler,* 62 S. C. 165; *Crawley* v. *Com.* 123 Pa. 275; *Czarra* v. *Board of Med. Supv.* 25 App. D. C. 443; *Dent* v. *Virginia,* 129 U. S. 114; *Eastman* v. *State,* 109 Ind. 278; *Filber* v. *Dautermann,* 26 Wis. 520; *Flournoy* v. *City,* 17 Ind. 169; *Halstead* v. *Nelson,* 36 Hun, 149; *Hawker* v. *People,* 170 U. S. 189; *Hewitt* v. *State Board,* 148 Cal. 590; *Hurtado* v. *California,* 110 U. S. 516; *Jacobson* v. *Massachusetts,* 197 U. S. 11; *Lancaster* v. *Richardson,* 4 Lans. 136; *Re Lowenthal,* 78 Cal. 429, 21 Pac. 7; *Meffert* v. *State Board,* 66 Kan. 710; *Munk* v. *Frink,* 81 Neb. 631; *People* v. *Apfelbaum,* 251 Ill. 18; *Philbrook* v. *Newman,* 85 Fed. 189; *Reetz* v. *Michigan,* 188 U. S. 505; *San Luis Obispo* v. *Hendricks,* 71 Cal. 242; *Smith* v. *Board,* 117 N. W. (Iowa); *Re Smith,* 10 Wend. 449; *Southern R. Co.* v. *Inman,* 11 Ga. App. 564; *State* v. *Marble,* 72 Ohio St. 21; *State ex rel. Powell* v. *State Board,* 32 Mich. 324; *State Board* v. *Roy,* 22 R. I. 538; *State* v. *Schaeffer,* 109 N. W. 522 (Wis.); *State* v. *State Board,* 34 Minn. 387; *State* v. *Webster,* 150 Ind. 616; *State Med. Board* v. *Stewart,* 46 Wash. 79; *Taylor* v. *The Marcella,* Fed. Cas. No. 782; *Ex parte Tyler,* 107 Cal. 78, 40 Pac. 33; *United States* v. *Four Hundred & Twenty Dollars,* 163 Fed. 805; *United States* v. *Parks,* 93 Fed. 414; *Watson* v. *Maryland,* 218 U. S. 173; *Widing* v. *Oyer,* 13 Johns. 124; *Wilkins* v. *State,* 16 N. E. 192; *Williams* v. *Arkansas,* 217 U. S. 79; *Williams* v. *People,* 17 Ill. App. 274; *Woolverton* v. *Taylor,* 132 Ill. 197; 30 Cyc. 1335, 1547, 1555, 1557, 1558; U. S. Crim. Code, secs. 211, 335.

*Mr. H. Ralph Burton,* Attorney for the Medical Society of the District of Columbia, and *Mr. George X. McLanahan* filed a brief as *amicus curiæ.*

Mr. Justice Van Orsdel delivered the opinion of the Court:

It is contended by counsel for appellant that the act of Congress, "in the particular involved, is unconstitutional and void, for that it makes the Board of Medical Supervisors both accuser and judge of the licentiate affected." It is within the police power of the State, for the protection of the life and health of the citizen, to prescribe general requirements which all persons must meet who seek to enter the medical profession. When the requirements are not unreasonable, and the procedure prescribed for the granting of licenses is uniform in its application, it will be upheld as constitutional. *Dent* v. *West Virginia*, 129 U. S. 114, 32 L. ed. 623, 9 Sup. Ct. Rep. 231. On the same principle is the legislature vested with power to specify uniform grounds of procedure for revoking licenses. "It is too well settled to require discussion at this day that the police power of the States extends to the regulation of certain trades and callings, particularly those which closely concern the public health. There is perhaps no profession more properly open to such regulation than that which embraces the practitioners of medicine. Dealing, as its followers do, with the lives and health of the people, and requiring for its successful practice general education and technical skill, as well as good character, it is obviously one of those vocations where the power of the State may be exerted to see that only properly qualified persons shall undertake its responsible and difficult duties." *Watson* v. *Maryland*, 218 U. S. 173, 54 L. ed. 987, 30 Sup. Ct. Rep. 644. Of the present act, this court, in the case of *Czarra* v. *Medical Supers.* 25 App. D. C. 443, said: "That Congress had the power to regulate the practice of medicine and surgery in the District of Columbia, and to prescribe the reasonable qualifications required by this act, as well as to create a special tribunal, and invest it with the power to revoke the licenses of practitioners for sufficient cause, there can be no doubt."

The procedure provided in the present case is not to be conducted by a court, but is in the nature of an investigation by an administrative board. There is nothing in the act to prevent

anyone from lodging with the board a proper complaint, upon which the board would have legal power to proceed. The complaint in this instance was not formulated by the board, as it is contended the statute requires, but it was filed by the executive committee of the Medical Society of the District of Columbia. The statute places the power of removal in the board of supervisors, states the several grounds which may form the basis for the revocation of a license, any one of which constitutes a separate cause of action, and requires that the accused shall be furnished with a copy of the complaint and be given a hearing. So far as the act is concerned,—and, indeed, so far as public policy would seem to dictate,—the complaint may originate from any source which the board may deem reliable. There is nothing in the act which even intimates either that the board is forbidden to formulate the complaint, or that it alone can make the complaint.

The bar of limitations is invoked on three separate grounds. First, it is urged that, as more than two years elapsed between the affirmance of the conviction by this court, when the board could have acted, and the institution of the present action, the board is estopped because the act provides that the "board may at any time within two years from the refusal or revocation of a license, or the cancelation of registration under this section, by a vote of four members, issue, without examination, a new license to the person so affected, restoring to him or her all the rights and privileges of which he or she has been deprived by said board." The difficulty with this contention is that the limitation for reinstatement begins to run from the date of the revocation of the license, and not from the date when the cause of actions accrues. This is too plain to need elaboration.

The bar of limitations is invoked in the second place under sec. 1265, D. C. Code [31 Stat. at L. 1389, chap. 854], which provides, among other things, that actions to enforce a statutory penalty or forfeiture can ony be maintained within one year after the cause of action accrues. More than one year elapsed between the date when the judgment of conviction was entered upon the mandate of this court affirming the original judgment

and the filing of the complaint in the present action. Conceding for the purpose of argument only, but not deciding, the doubtful proposition that statutes of limitations have any application whatever to proceedings of this sort, is this a proceeding to enforce a penalty or forfeiture? We think not. The terms "penalty" and "forfeiture" are generally used synonymously. *Taylor* v. *The Marcella,* 1 Woods, 302, Fed. Cas. No. 13,797; *Butler* v. *Butler,* 62 S. C. 165, 40 S. E. 138; *Crawley* v. *Com.* 123 Pa. 275, 16 Atl. 416. In the legal sense they relate to a statutory forfeiture of money payable as a punishment for a violation of a statute. *San Luis Obispo County* v. *Hendricks,* 71 Cal. 242, 11 Pac. 682; *Lancaster* v. *Richardson,* 4 Lans. 136; *United States* v. *Four Hundred and Twenty Dollars,* 162 Fed. 803, 805.

The revocation of the license is in the nature of a remedial measure for the protection of the public, and not a penalty or forfeiture. The statute does not provide *ipso facto* that a physician convicted of a crime involving moral turpitude shall thereby forfeit his right to continue in the practice of his profession. It merely makes that a cause of action for revocation of his license, and provides a tribunal and a remedy for the protection of society from being imposed upon by persons of immoral character practising medicine. Instead of a statutory forfeiture, the whole matter is in the discretion and judgment of the board. If the board had refused to revoke appellant's license, the public would have been without remedy. The action is to revoke a license, and not to enforce a penalty or forfeiture. *State* v. *Schaeffer,* 129 Wis. 459, 109 N. W. 522.

That the proceeding for the revocation of a license is not to enforce a forfeiture or penalty may be implied from the fact that the revocation is not in the nature of the imposition of an additional punishment for the past offense of which appellant was convicted. "That the form in which this legislation is cast suggests the idea of the imposition of an additional punishment for past offenses is not conclusive. We must look at the substance, and not the form, and the statute should be regarded as though it in terms declared that one who had violated the crim-

inal laws of the State should be deemed of such bad character as to be unfit to practise medicine, and that the record of a trial and conviction should be conclusive evidence of such violation. * * * The State is not seeking to further punish a criminal, but only to protect its citizens from physicians of bad character. The vital matter is not the conviction, but the violation of law. The former is merely the prescribed evidence of the latter." *Hawker* v. *New York,* 170 U. S. 189, 42 L. ed. 1002, 18 Sup. Ct. Rep. 573.

But it is insisted that more than three years elapsed between the date of appellant's conviction in the supreme court of the District and the date of the filing of the complaint herein, and, therefore, the general three-year Statute of Limitations applies. The judgment of conviction did not become final until entered upon the mandate of this court affirming the original judgment. The original judgment was suspended pending appeal. To hold otherwise would enable designing persons by appeal and delay to evade the operation of the act under consideration. The Statute of Limitations, however, only runs from the final act or determination of the action which is invoked as a bar to subsequent proceedings. Less than three years intervened in this case between the final judgment of conviction and the institution of this proceeding. It is, therefore, unnecessary to consider the application of the general three-year Statute of Limitations to a proceeding of this sort.

The final contention of counsel is that "the crime of which appellant was convicted is not one involving moral turpitude." It is urged that the crime consisted merely of placing a letter in the mails. It involves not only the placing of a letter in the mails, but a letter containing forbidden contents. It is the nature of the letter mailed which constitutes the crime. Had an abortion been committed as a result of the information contained in the letter by another than appellant himself, appellant would have stood in the relation of an accessory before the fact to the commission of the crime. Abortion is held to involve moral turpitude. *Widrig* v. *Oyer,* 13 Johns. 124; *Filber* v. *Dauterman,* 26 Wis. 518; *Bissell* v. *Cornell,* 24 Wend. 354. It

cannot be that one who paves the way for the commission of a crime involving moral turpitude is less immoral than the principal. The law recognizes no distinction. Says Bouvier, "Everything done contrary to justice, honesty, modesty, or good morals, is said to be done with turpitude." Newell on Slander & Libel, 3d ed. sec. 66, defines moral turpitude as "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of right and duty between man and man."

We are not concerned with the question of whether the crime of which appellant was convicted is a misdemeanor or a felony. Moral turpitude may be involved in the commission of a misdemeanor, as well as in the higher grade of crime. In *Halstead* v. *Nelson*, 36 Hun, 149, the court held that the mailing of a printed circular advertising articles for the preventing of conception and the procuring of abortion, and stating where the articles could be purchased, was a misdemeanor involving moral turpitude. The court said: "Mailing a circular of the kind described in the statement of facts was, in 1878, an indictable misdemeanor by the laws of this State. * * * We think it cannot be questioned that the commission of the offense charged involves moral turpitude." In the case of *Re Kirby*, 10 S. D. 322, 39 L.R.A. 856, 73 N. W. 92, an attorney was disbarred for receiving property belonging to the United States with the intention of converting it to his own use. This was held to involve moral turpitude. In the case of *Re Coffey*, 123 Cal. 522, 56 Pac. 448, extortion was held to involve moral turpitude so as to justify disbarment, moral turpitude being defined, following Bouvier, as "everything done contrary to justice, honesty, modesty, or good morals."

Analyzing the motive which prompted appellant to write the letter, for the mailing of which he was convicted, but one conclusion can be reached; namely, a wilful and intentional disposition on his part, for a small pecuniary consideration, to prostitute his high profession by paving the way for the commission of a base felony. It may be that a crime could be committed by

merely mailing a letter in violation of the act of Congress, without involving moral turpitude; but that would depend entirely upon the contents of the letter which forms the basis of the forbidden act. The law violated by appellant was not enacted to purge the mails of a particular class of mail matter, but for the protection of public morals and to prevent the promotion of crime. Abortion is an immoral, base crime; and he who aids and abets in its commission by an unlawful use of the mails is guilty of an act involving moral turpitude.

The finding of the Board of Medical Supervisors is affirmed, with costs.　　　　　　　　　　　　　　　　*Affirmed.*