STATE, Plaintiff, vs. HAGGERTY, Defendant.

*October 16—November 10, 1942.*

*Harlan B. Rogers,* special counsel for the Board of State Bar Commissioners, for the plaintiff.

*Ray J. Haggerty in pro. per.* for the defendant.

FRITZ, J.   Briefly stated, so far as here material, the facts found and reported by the referee in relation to the matters charged in the complaint are as follows.   Upon defendant's admission to the bar in 1906, he located at Park Falls, where he practiced law until 1917, excepting that during five years he was postmaster; and for two and a half years he was also president of a national bank which he was instrumental in organizing.   In 1917 he enlisted and served in the army until 1919, and upon his discharge he worked in Detroit until 1920, when he returned to Park Falls for a year.   Then he returned to Detroit and was employed there in a responsible position by a trust company until he returned in 1935 to Phillips, Wisconsin, where he has been practicing law.   In 1938 he

was elected district attorney of Price county, but was defeated for re-election in 1940; and in April, 1941, he was defeated as a candidate for circuit judge.

In 1916 and 1917 he gave as security for two loans, aggregating $3,500, four certificates purporting to be for a total of twenty shares of stock in the bank of which he was president. The certificates were forgeries, but he finally paid the loans with funds borrowed from friends whom he repaid by 1935; and on the hearing before the referee, he admitted the charges of forgery and expressed remorse for what he had done. Two of the certificates remained in the possession of one of the mortgagees until they were delivered in 1941 to someone and used as campaign documents against Haggerty during his campaign for circuit judge.

In 1916 Haggerty collected the amount owing on an $800 note, secured by a mortgage, which was left with him for collection, and falsely executed a satisfaction thereof, but did not account for the proceeds until several months later. The referee found that he used the proceeds during that period and satisfied the mortgage in some manner not shown by the evidence so as to conceal the facts from the owner of the note, but that it was paid ultimately in full with interest to the owner.

During the time Haggerty was in the army in 1917 to 1919, he was tried by court-martial on charges of violating certain articles of war by making a false statement and by leaving camp without permission. He was found guilty on the latter charge, but in respect thereto the referee found that—

"this violation was but a trivial offense, he having left the camp, to visit his mother, after his return to the camp from an absence on official business and in violation of an order which had been issued, in the meantime, prohibiting officers from leaving camp, and of which he was not informed."

Haggerty was acquitted on the other charge, and in respect thereto the referee found that he had represented to certain of his creditors, while in the army, that he had made an al-

lotment for the repayment of certain loans; that he intended to make and thought he had made the allotment but that it could not be made because of army regulations; that he, however, paid the creditors in full, as though the allotment had been made as represented, and was not guilty of any substantial offense in that connection.

It was also charged in the complaint, that in October, 1935, Haggerty was intrusted with five promissory notes of the Kneeland McLurg Flooring Company for the purpose of disposing of the same for its credit, but that he used them as collateral to his own loans and appropriated the proceeds therefrom. He denies the charge and claims that W. K. Parkinson, who was president of the corporation, was indebted to him in a substantial sum; that he had financially aided Parkinson on various occasions, and at one time to the extent of $2,500; that being financially embarrassed in 1935 and wishing to secure funds to liquidate some of his indebtedness, he asked Parkinson for assistance, and was told by him that the corporation was indebted to him and he had a credit balance of at least $5,000, and while it was short of cash, it would give Parkinson notes for $2,500, which Haggerty might sell and use the proceeds; and that the amount of the notes would be charged to Parkinson's account with the corporation. The referee found that Haggerty had no negotiations with any member of Kneeland McLurg Flooring Company except Parkinson, who procured and gave to defendant the notes signed by the treasurer of the corporation, and that defendant treated them as his own; that Parkinson did not have a credit with the corporation of $2,500 or any substantial amount, but this was unknown to defendant and when he became convinced thereof he offered as a moral, but not legal, obligation to repay the corporation as rapidly as possible for any notes which it had to pay; that he has repaid a very substantial part thereof, but subsequently the corporation was forced into bankruptcy, and the trustee recovered a judgment against Haggerty on notes given for the obligation, and part of the

judgment had not been paid at the time of the hearing. The referee reported that he was not convinced—

"that the defendant is guilty of any wrongdoing in connection with the matter;" and found, "that the charge against" him "growing out of the Kneeland McLurg Flooring Company transaction is not proven."

The referee also reported that—

"All of the misconduct charged against the defendant (except the Kneeland McLurg Flooring Company matter) occurred between twenty and twenty-five years ago and within a period of about twelve months. . . . For two years he was in the army, but during all of the remainder of the intervening years, the criminal laws have at all times been available for proper punishment of the defendant for his misdoings. It is true that part of the time the defendant was out of the state, but the offenses were extraditable, and during several of the years the defendant was in his home county practicing law, running for and elected to the office of district attorney, and running for and making a substantial showing in his efforts to become circuit judge . . .;" that "In no instance of the defendant's misconduct was the relation of attorney and client involved. His wrongdoings were, therefore, criminal offenses and not violation of duty as between attorney and client;" that "the various offenses committed in 1916 were quite extensively known in Price county from 1918 to the present time, but no one has seen fit to file any charge of misconduct against him or to invoke the criminal law or to bring a proceeding for disbarment, *except* in the *summer of 1939* when a complaint was made to the bar commissioners, . . ." who decided to "take no action because of the antiquity of the original complaint and the inability to develop evidence in connection with the Kneeland McLurg Flooring Company matter that would show what the facts were. After the defendant became a candidate for circuit judge in the spring of 1941, a meeting of certain members of the bar was held for the purpose of taking steps seeking disbarment of the defendant, and as a consequence the present complaint was filed;" and that "not a single client was called to testify that the defendant had wronged him or that he desired the defendant disbarred. Not one person testified that he con-

sidered it dangerous to the public welfare to allow the defendant to continue in the practice of his chosen profession, while a score or more of the leading citizens of Price county testified that they believed the defendant was truly penitent for what he had done, that he had devoted twenty years of his life to paying the $25,000 or more which he owed, refused to go into bankruptcy when repeatedly urged so to do, that they believed him to have completely reformed, and that no harm would befall the public if he continued to practice law. There was not one word of evidence as to misconduct on the part of the defendant during the past more than twenty years (after eliminating the Kneeland McLurg Flooring Company incident), and apparently he has lived a moral and upright life in every way."

Upon a review of the record, it appears to fairly sustain the referee's findings and report as to matters stated above, excepting that he appears to have overlooked that the relation of attorney and client was involved, and Haggerty violated his duty as an attorney in using for his own purposes, for a time, the proceeds which he collected in 1916 on his client's note and mortgage for $800.

Upon the matters thus found and reported, the referee's conclusions were as follows: ·

"In view of the apparent complete regeneration of the defendant, as evidenced by his many years of correct living, I do not believe he should now be disbarred. As previously stated, any punishment to be meted out to him for violation of the criminal laws, is for the criminal courts. This court, on the other hand, cannot be placed in a position of approving or condoning the serious misconduct of the defendant. I recommend, therefore, that he be reprimanded by the court and required to pay the costs of this proceeding as a condition to his right to continue in the practice of law."

In arriving at these conclusions, the referee evidently recognized that—

"The ordinary statutes of limitation have no application to disbarment proceedings, nor does the circumstance that the facts set up as a ground for disbarment constitute a crime,

prosecution for which in a criminal proceeding is barred by limitations, affect the disbarment proceeding, except where conviction of the crime for which the revocation of the attorney's license is asked is a necessary prerequisite. However, proceedings instituted after a great lapse of time from the commission of the act complained of are regarded with disfavor, and the court may refuse to hear an application to disbar that has been unreasonably delayed." 5 Am. Jur. p. 434, sec. 288; see also 2 Thornton, Attorneys at Law, sec. 880.

Likewise the referee apparently took into consideration that—

"Punishment of offending attorneys is neither the primary nor the ultimate purpose of disbarment proceedings under sec. 256.28, Stats., although it is an inevitable incident of a judgment of disbarment or suspension from practice. Punishment, as this court has but recently said, 'is not and should not be a primary consideration of those having to deal with cases of this character.' *State v. Barto*, 202 Wis. 329, 232 N. W. 553, 561. As was further said in that case: '. . . The principal question is, Should a person so lacking in moral sense and appreciation of the relation of attorney and client as is the defendant in this case be permitted in the public interest to continue the practice of law?' *In re Wall*, 107 U. S. 265, 2 Sup. Ct. 569, 27 L. Ed. 552." *State v. Kern*, 203 Wis. 178, 181, 233 N. W. 629.

The application of those principles to the facts found by the referee warrant his conclusions that the defendant should not be disbarred presently, but, in view of the grave misconduct admitted by the defendant as found by the referee, we cannot adopt the recommendation that this proceeding be dismissed now with but merely a reprimand, upon the payment of the costs by defendant. His transgressions in unlawfully using the spurious certificates of stock and the proceeds of his client's note during the years he was engaged in the practice of law and even had the duty, as district attorney, of prosecuting offenders for such criminal violations, were of such fraudulent and grave character that—

"disciplinary measures should be at least coextensive with an effective judicial disapproval of the confessed misconduct, so that they cannot be misunderstood or 'construed as an implied judicial indorsement of defendant's misconduct, even taking into consideration all of the mitigating circumstances urged in behalf of the defendant.' *State v. Kiefer,* 197 Wis. 524, 531, 222 N. W. 795." *State v. Kern, supra;* see also *State v. Soderberg,* 215 Wis. 571, 255 N. W. 906.

Therefore, it is our conclusion that, in lieu of dismissal at this time, these proceedings shall be held in abeyance, upon the payment presently of the costs thereof, for the period of two years from the time of such payment, and that at the end thereof the proceedings can be dismissed, upon a proper showing by defendant that his conduct then measures up to the required standards so as to constitute assurance of his moral fitness and competency to continue in the profession.

*By the Court.*—It is ordered and adjudged that defendant be required to pay forthwith the costs and expenses of these proceedings, including the fees of the referee and official reporter; and that upon the termination of the period of two years, if defendant shall satisfy the court, both by his conduct from this time forward and by assurances then given, that he will not again be guilty of misconduct in violation of his duties as a member of the bar, these proceedings shall be dismissed.