George E. V. STONE, Petitioner,

v.

BOARD OF EXAMINERS AND REGISTRARS OF ARCHITECTS, Respondent.

No. 1856.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 10, 1956.

Decided Oct. 23, 1956.

Rehearing Denied Nov. 5, 1956.

Harry L. Ryan, Jr., Washington, D. C., for petitioner.

Richard W. Barton, Asst. Corp. Counsel, with whom Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, Milton D. Korman and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for respondent.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

HOOD, Associate Judge.

Petitioner seeks review of an order of the Board of Examiners and Registrars of Architects revoking his certificate of regis-

tration.[1] His registration had been granted in 1952 under that section of the Architects' Registration Act, as amended September 7, 1950, which provides:

"Any properly qualified person may be granted registration without examination who submits an affidavit establishing to the satisfaction of the Board, of Examiners and Registrars of Architects that he or she was regularly engaged in the practice of architecture in the District of Columbia for five years immediately preceding December 7, 1950: Provided, That registration shall not be granted under this subsection unless the application therefor is filed with the Board of Examiners and Registrars of Architects within one year after December 7, 1950." Code 1951, § 2-1019(b).

Petitioner's application for registration, filed under oath on December 6, 1951, required him to furnish various information regarding his training and experience. In addition thereto, it inquired if petitioner was registered in any State. He indicated that he was not so registered. Another question was: "Has any one of your registration certificates ever been revoked?" He answered, "No." His application was granted and since then he has continuously practiced architecture, renewing his certificate annually.[2]

In October 1955 the Board learned that petitioner had been registered in Maryland and that his registration there had been revoked in 1942 because of his conviction that year in the District Court of the United States for the District of Columbia upon a charge of forgery and uttering, for which he had been sentenced to the penitentiary. On the basis of this information the Board notified petitioner to show cause why his registration should not be revoked. The proposed revocation was based upon the ground that by answering "No" to the question above quoted, petitioner's certificate "was obtained through fraud or misrepresentation."[3]

At the hearing petitioner did not dispute either his conviction or the revocation of his Maryland certificate. But he testified that when he filed his District of Columbia application he did not know his Maryland registration had been revoked; that he had never received notification of its revocation; that he had not applied for renewal of his Maryland registration and assumed it had been suspended for nonpayment of dues; and that he had made no inquiry of the Maryland Board with respect to the status of his registration. During the course of petitioner's testimony the Chairman of the Board said: "Your point, then, is that when you signed this application you didn't know whether you—whether your license in Maryland had been revoked or not. Therefore, you just said No. Is that your position?" To this the petitioner responded: "That's about it."

After taking the matter under advisement the Board found as a fact that "Prior to December 5, 1951, said Stone knew that his certificate to practice architecture in the State of Maryland had been revoked," and that "Said Stone's answer of 'No' to the question, on the application filed with this Board, 'Has any one of your registration certificates ever been revoked?', was false, and was known by said Stone to be false," and concluded that petitioner's certificate should be revoked.

Petitioner contends that the findings above quoted are not supported by the evidence. He argues that the evidence showed his erroneous answer "was at most a mistake." We do not think that the Board was bound to accept petitioner's testimony. He is a man of intelligence and experience, fully aware of the importance of registration of architects. He was reg-

1. Code 1951, Supp. IV, § 11-772(e) (4).

2. Code 1951, § 2-1025.

3. Code 1951, § 2-1027(a).

istered in Maryland from 1936 until 1942. After being convicted and serving his sentence he did not return to Maryland, but instead began to practice architecture in the District of Columbia where registration was not then compulsory. In 1951 when it became necessary to register in the District he applied for registration on the basis that he was not registered elsewhere and that no registration of his had ever been revoked. Under these circumstances the Board could reasonably find that sometime prior to 1951 petitioner had become aware of the fact that his Maryland registration had been revoked, especially in view of the fact that for several years preceding 1951 petitioner had done business in Maryland through an "associate." The Board could have concluded that it was inconceivable that from 1943 to 1951 petitioner made no inquiry, official or otherwise, of the status of his prior registration in Maryland. We cannot hold that the finding of the Board was arbitrary or capricious.

Petitioner also contends that the Board by annually renewing his registration has waived its right to revoke. This contention cannot stand. The statute requires registration and annual renewal. Once registered an architect may practice until his registration is lawfully revoked or until he permits his certificate to lapse for failure to renew. He is entitled to renew unless his registration is revoked and it cannot be revoked except after notice and hearing. The Board could not have refused to renew on the sole ground that charges were pending against petitioner or that it had received information adverse to him. Renewal is largely a ministerial act and in no way establishes the validity of the original registration.

Another claim of petitioner is that the revocation proceedings were barred by

the statute of limitations. In Kemp v. Board of Medical Supervisors, 46 App.D.C. 173, it was specifically held that the revocation of a license is in the nature of a remedial measure for the protection of the public and not a penalty or forfeiture, and that the statutory limitation pertaining to penalties and forfeitures has no application to such a proceeding. In addition the court expressed grave doubt that the general statute of limitations has any applicability to such proceedings.[4] Even if applicable, the general three-year statute of limitations would not bar this proceeding. It was based on fraud or misrepresentation and the statute would not begin to run until discovery of the facts. It is manifest from the record that the Board knew nothing of the fraud, or had reason to suspect it, until October 1955.

Finally, petitioner contends that even though his answer may have been false, it constitutes no ground for revocation. His argument is that his answer dealt with an immaterial matter, that he was entitled to registration upon proof that he had been engaged in the practice of architecture in the District for five years immediately preceding December 1950, and that he was "properly qualified" within the meaning of the statute; and he says there was ample proof of both the required practice and the qualification. In other words, as we understand his argument, petitioner's position is that if he had answered the question truthfully and the Board had had all the facts before it, the Board nevertheless would have been required to grant him registration. This argument seemingly flows from the fact that the Act does not authorize the Board to refuse or revoke registration merely on the basis of a revocation in another jurisdiction.

The answer to this argument is that the Board has not revoked petitioner's registra-

---

4. As to the applicability of a statute of limitations to proceedings of this kind see: State Medical Examining Board v. Stewart, 46 Wash. 79, 89 P. 475, 11 L.R.A.,N.S., 557; State Bar Commis- sion ex rel. Williams v. Sullivan, 35 Okl. 745, 131 P. 703, L.R.A.1915D, 1218; In re Egan, 36 S.D. 228, 154 N.W. 521; State v. Haggerty, 241 Wis. 486, 6 N.W. 2d 203.

tion because of the Maryland revocation, but because of his fraud or misrepresentation in concealing the Maryland revocation. Petitioner was entitled to registration only if he was properly qualified and it was the duty of the Board to ascertain his qualifications. Obviously if the Board had known of the Maryland revocation it would have made inquiries as to the basis of such action to determine whether it in any way pertained to his professional qualification. The Board had the right to ask the question and it was entitled to a truthful answer. What action the Board would or should have taken if petitioner had answered truthfully, is not the question before us. Petitioner by his false answer prevented the Board from making any investigation of a matter which might have materially affected its decision, and we cannot hold that the record does not furnish support for the Board's conclusion that petitioner obtained his registration through fraud or misrepresentation.

Affirmed.