STATE EX REL. REYNOLDS, Attorney General, Petitioner, vs. CIRCUIT COURT FOR MILWAUKEE COUNTY, Respondent.

*June 2—June 6, 1927.*

*Courts: Judges sitting with presiding judge: Attorneys: Power of court to investigate charges against members of its bar: To compel witness to be sworn: Contempt: Habeas corpus: Not to serve as writ of error.*

[1. Whether the judge of one court of co-ordinate jurisdiction can determine, upon application for a writ of *habeas corpus*, whether another co-ordinate branch of the same court had jurisdiction to adjudge the applicant guilty of contempt, not decided.] p. 139.

2. The writ of *habeas corpus* tests the jurisdiction of the court, and never performs the function of a writ of error. p. 140.

3. The fact that two other judges of the same circuit sat with the presiding circuit judge, at his request, in investigating charges of ambulance chasing contained in a petition of members of

the bar of the circuit, did not prevent such tribunal from being a judicial body, with jurisdiction to adjudge a witness guilty of contempt for refusing to be sworn, where the other judges sat in a merely advisory capacity and all orders were made by the presiding judge. p. 140.

4. One branch of the circuit court having more than one judge had jurisdiction to investigate the charges of ambulance chasing and claim adjusting made in the petition and had power to proceed with the investigation to eliminate unprofessional practices and prevent the use of processes of the court in such manner as to interfere with and obstruct its functions. p. 142.

5. Where, during an investigation conducted by three attorneys at the request of the circuit court, an attorney presented an affidavit to the court in another proceeding charging that the investigators were conspiring to commit a fraud on the court by withholding information which would have proved the falsity of the accusations, the circuit court had the power, and it was its duty, to investigate the charges in the affidavit and to compel witnesses to testify under oath, and, although affiant was ready to make a statement not under oath concerning the facts related in the affidavit, to adjudge him in contempt for refusing to be sworn. p. 142.

6. Where a petition for a writ of *habeas corpus* by a witness adjudged in contempt of court for refusing to be sworn as a witness showed that the circuit court had jurisdiction to punish him for contempt, the writ should have been refused. p. 143.

7. There is no necessity for any formal charge against one who is guilty of criminal contempt committed in the immediate view and presence of the court. p. 144.

ACTION UNDER THE ORIGINAL JURISDICTION of the supreme court on petition of the attorney general of the state of Wisconsin. On this petition Branch No. 1 of the circuit court for Milwaukee county, OTTO H. BREIDENBACH, judge presiding, was ordered to show cause why a writ of *mandamus* should not issue directing that a writ of *habeas corpus* which had been issued on petition of *William B. Rubin* should not be quashed and said *Rubin* remanded to the custody of the sheriff of Milwaukee county.

*Frank M. Hoyt, Francis E. McGovern, Benjamin Poss, Bernard V. Brady, George B. Hudnall,* and *Walter H. Bender,* all of Milwaukee, as *amici curiæ,* for the petitioner.

For the respondent there was a brief by *Irving A. Fish* of Milwaukee, and oral argument by *Mr. Fish* and *Mr. Stephen A. Day* of Milwaukee and by *Mr. Philip F. La Follette* of Madison.

Oral argument by *Carl H. Juergens* of Milwaukee, for the sheriff of Milwaukee county, and by *Geo. F. Bowman,* assistant district attorney of Milwaukee county.

The following decision was announced June 6, 1927:

PER CURIAM. The court reserves for future determination the question whether the judge of one court of coordinate jurisdiction can determine, upon an application for a writ of *habeas corpus,* whether another court of co-ordinate jurisdiction had jurisdiction to enter the judgment or order which restrains the liberty of the applicant for the writ.

The court determines:

(1) That Branch No. 8 of the circuit court for Milwaukee county had jurisdiction to investigate the charges presented in the petition signed by William H. Churchill and others.

(2) That the fact that two other circuit judges sat with the presiding judge of Branch No. 8 did not change the nature of the judicial tribunal that was proceeding with its investigation under the Churchill petition or deprive Branch No. 8 of the power to punish for contempt.

(3) That it was the duty of Branch No. 8 of the circuit court for Milwaukee county to investigate the charges made in the affidavit of *William B. Rubin* against the three lawyers that were conducting the investigation before the court; that the court had power to proceed in the manner in which it did proceed, and to adjudge that *William B. Rubin* was guilty of contempt in refusing to be sworn to give testimony to support such charges when directed so to do by the court.

(4) That upon the facts appearing upon the verified petition for the writ of *habeas corpus* the judge of Branch No. 1 of the circuit court for Milwaukee county should not have issued the writ.

(5) That a peremptory writ of *mandamus* issue commanding the judge of Branch No. 1 of the circuit court for Milwaukee county to quash the writ of *habeas corpus* and remand *William B. Rubin* to the custody of the sheriff.

So ordered.

The following memorandum was filed June 6, 1927:

CROWNHART, J.   I withhold decision in this case until I can give it full consideration.   It involves matters of very grave importance.   It was hastily presented.   The record is very long.   I have been unable to give the matter the careful study that the case demands.   The effect of the decision may have far-reaching results in the future, and this court should have at least the usual time to meet and solve the issues presented.

The following opinion was filed June 20, 1927:

STEVENS, J.   William H. Churchill, and ten other members of the bar, being the directors of the Lawyers' Club of Milwaukee county, filed with Branch No. 8 of the circuit court for Milwaukee county a petition charging "that certain disreputable and evil practices are now prevalent in Milwaukee county and elsewhere in Wisconsin that are against public policy; that seriously affect the administration of justice in this county and in this state; that tend to interfere with and obstruct the functions of nearly all our courts and tend to bring our courts and the practice of law into public contempt and ridicule;" that among these evil practices and abuses is the soliciting and inciting of personal injury and other damage cases by men who are not members of the bar and who in turn employ other solicitors, not members of the bar, who make a wholesale business of soliciting cases; that men engaged in this business arrange to get tips from persons so situated as to get first-hand information as to accidents so that solicitors may go without delay to secure

these contracts; that such solicitation takes place immediately after the accident at the scene of the accident or in homes and in hospitals, and that, when necessary, solicitors exhibit stars and official badges and impersonate officers in order to secure access to injured persons.

The petition further alleged that when necessary to have the services of members of the bar to prosecute actions on these claims, these solicitors split fees with such members of the bar as are willing to participate in this kind of litigation; that actions are brought in the name of the injured person without the knowledge or consent of such injured person; that these solicitors unlawfully incite and provoke litigation which would otherwise never result; that actions are improvidently brought, court calendars are congested, proper litigation delayed, and the expenses of maintaining courts greatly increased by this class of litigation.

The petition also alleged that the same means are used to solicit the defense of criminal actions, use being made of tips and secret confederates in securing this business.

The petition further alleges that all but a comparatively few members of the bar "earnestly and successfully strive to fulfil all requirements and live up to the higher ideals of the profession," but that they are embarrassed in their work and humiliated by the conduct of those who co-operate with these solicitors, and that these practices have brought the bench and bar into disrepute.

After hearing the petitioners, the matter presented by the petition was set down for hearing in Branch No. 8 of the circuit court for Milwaukee county before Judge CHARLES L. AARONS, judge presiding, by a court order signed by Judge AARONS. This order recited that Judge AARONS "has requested Hon. GUSTAVE G. GEHRZ and the Hon. J. J. GREGORY to sit with me, as associates during said hearing."

Three members of the Lawyers' Club represented the petitioners before the court and presented proof to substan-

tiate the allegations of the petition.   While the investigation was in progress the court's attention was called to the fact that, in an action begun by *William B. Rubin* against the three lawyers who were conducting the investigation, the plaintiff, *Rubin,* had filed an affidavit in which he stated that these three lawyers "for personal gain and political advantage, . . . on the pretext of exposing the so-called 'ambulance chasing' of personal injury cases in Milwaukee, have entered into a conspiracy, actuated by jealousy, envy, and hatred, to injure the good name and reputation of this affiant," and that pursuant to this conspiracy "said defendants have in said so-called investigation wilfully and deliberately withheld information which they had concerning matters which . . . would have proven the untruth and falseness of each and every one of the accusations."

That thereafter, at the request of the court, *Mr. Rubin* appeared before Branch No. 8 and was informed by the presiding judge of said branch of the fact that the contents of said affidavit had been brought to the attention of the court.   *Mr. Rubin* replied that he desired to make a statement at length.   The court informed *Mr. Rubin* that it was sitting to hear evidence and directed him to be sworn before he presented his proof as to the charges made in the affidavit. *Mr. Rubin* declined to be sworn, giving as his reasons therefor the fact that the tribunal before which he was appearing was not a court and that the proceeding was an extra-judicial one and that the tribunal had no jurisdiction over him or power to require him to be sworn.

Upon *Mr. Rubin* persisting in his refusal to be sworn and give testimony, Judge AARONS, as presiding judge of Branch No. 8, adjudged him guilty of contempt for contumaciously and unlawfully refusing to be sworn as a witness, after being directed by the court so to do, and for wilfully and unlawfully disobeying the order of the court directing him to submit and disclose to the court evidence showing upon what

facts the allegations contained in his affidavit are based so far as the same charges certain members of the bar with practicing a fraud upon the court by the institution and prosecution of the proceeding under the Churchill petition which was still pending before and undetermined by the court.

The court granted *Mr. Rubin* a stay of ten days at his request. Thereafter he voluntarily surrendered himself to the sheriff and then presented a petition for a writ of *habeas corpus* to Judge BREIDENBACH, presiding judge of Branch No. 1 of the circuit court for Milwaukee county. The petition asserted that the tribunal which directed *Mr. Rubin* to be sworn had no jurisdiction to compel him to testify and that therefore the adjudication that he was guilty of contempt was made without jurisdiction and was therefore void. But the petition attached to and made a part thereof copies of the Churchill petition, the order for hearing thereon, the affidavit of *Mr. Rubin,* the minutes of the clerk, and the stenographic report of the proceedings leading up to the entry of the contempt judgment, as well as the judgment finding *Mr. Rubin* guilty of contempt and the commitment for contempt.

Upon this petition a writ of *habeas corpus* was issued and *Mr. Rubin* was released. The sheriff filed a return from which it appeared that *Mr. Rubin* when in custody was detained under a judgment for contempt entered by Branch No. 8. *Mr. Rubin* traversed the return by again asserting that this judgment was entered by a special tribunal, not a court, which had no power or jurisdiction to require him to testify or to commit him for contempt because of his refusal to testify.

At the request of Branch No. 8, members of the Milwaukee bar appeared before Branch No. 1 as friends of the court and insisted that Branch No. 1 had no power to interfere with the execution of the contempt judgment entered

by Branch No. 8 of the same court. But Branch No. 1 retained jurisdiction and adjourned the *habeas corpus* proceeding from time to time at the request of *Mr. Rubin.* Pending one of these adjournments the petition of the attorney general of Wisconsin was presented to this court alleging the presentation of the Churchill petition and the proceedings had thereunder in Branch No. 8 and that the proof taken therein had disclosed that between three and four hundred cases were pending in the courts of Milwaukee which were brought pursuant to contracts solicited as set forth in the Churchill petition, and that between one hundred and two hundred actions have also been begun pursuant to similar contracts in which no papers had been filed in court, and that the law firm of which *Mr. Rubin* was a member had been retained to prosecute actions for personal injuries and to defend persons charged with crime in cases secured by solicitation under contracts procured in the manner set forth in the Churchill petition. The petition then set forth the proceedings before Branch No. 1 in the *habeas corpus* action and prayed a writ of *mandamus* directing Branch No. 1 and the presiding judge thereof to quash the writ of *habeas corpus* and to remand *Mr. Rubin* to the custody of the sheriff.

(1) It is not essential to a decision of this case that the court should decide whether the judge of Branch No. 1 had the power, upon application for a writ of *habeas corpus,* to determine whether Branch No. 8 had jurisdiction to adjudge *Mr. Rubin* guilty of contempt, because, if the existence of such power be assumed, it clearly appears that Branch No. 8 had jurisdiction to enter the contempt judgment. That question is therefore reserved until it shall arise in a case where its determination is necessary to the decision of that case.

(2) The single question presented is whether the judgment finding *Mr. Rubin* guilty of contempt was entered by a judicial tribunal that had jurisdiction to require him to be

State ex rel. Reynolds v. Circuit Court, 193 Wis. 132.

sworn and to commit him for contempt upon his refusal to comply with the direction of the court. The writ of *habeas corpus* tests jurisdiction. It never performs the function of a writ of error.

*Mr. Rubin's* chief ground for challenging the jurisdiction of the court that adjudged him guilty of contempt was that it was not a court,—not a judicial body. This contention is based upon the fact that three of the judges of the Second judicial circuit of Wisconsin sat upon the bench instead of one. His position is best stated in his own language taken from his petition for the writ of *habeas corpus:* "That any party or witness to any matter before the circuit court is entitled to have the facts and the law determined by a single judge presiding over such court, without his receiving counsel or aid or assistance in any manner from any other person, judge or otherwise."

It appears from the petition and the return that all orders and rulings in the proceeding leading to the commitment of *Mr. Rubin* for contempt were made by Judge AARONS, the presiding judge of Branch No. 8. Neither Judge GEHRZ nor Judge GREGORY signed any order or judgment or ruled upon any motion. The most that is shown by the record is that Judge GEHRZ·asked questions and made suggestions during the course of the proceedings and that Judge AARONS consulted with these two associates at times. Judge AARONS fully and correctly stated the situation when he said to *Mr. Rubin:* "This is Branch No. 8, presided over by the speaker, that is by myself. Judges GREGORY and GEHRZ are here merely as associates or conferees. All orders are being made by this branch of the court."

We know of no rule of law which prohibits any judge from securing counsel, aid, or assistance from any proper or legitimate source in the solution of any question of law that is submitted to him for determination. Much of the time of judges is devoted to an endeavor to secure aid and assist-

ance from the decisions of judges who have either departed this life or whose decisions are enbalmed in the Reports. Those who occupy a place upon the bench should be as free to consult living judges as dead judges. Every member of an appellate court knows that the opportunity for consultation among the members of the appellate bench with reference to cases which they are called upon to decide is one of the most efficient aids in the administration of justice. The legislature recognized this fact when it required the circuit and the county judges of Wisconsin to meet annually for the very purpose of enabling them to secure the advantage that comes from the opportunity to consult with and secure the aid and advice of the other judges of the state. We should not hedge trial judges about with any technical rules that will stand in the way of these judicial officers having the benefit of this efficient aid in the administration of justice, especially in a case like the one at bar where the investigation is not confined to the rights of private litigants, but which involves a matter of vital importance to every member of the bench and bar of the Second judicial circuit and to the people of the state at large.

No case was cited and our investigation has disclosed none which holds that a judge may not consult with his fellow members of the bench with reference to the decision of cases pending before him. On the contrary, in *People v. Gilbert,* 281 Ill. 619, 621, 118 N. E. 196, 197, the trial court adopted the practice pursued by Judge AARONS in this case, in that he asked two judges of co-ordinate jurisdiction to sit with him during the trial in an advisory capacity. Although this was a contempt case that was closely contested at all points, no question was raised as to the right of the trial judge to ask these two judges to sit with him.

Some state statutes expressly limit the matters that may be considered by the judges of a court with several branches when sitting in banc. The Wisconsin statutes contain no

such limitation. On the contrary, sub. (3) of sec. 252.07 of the Statutes contains the broad general grant of power to the judges of any court having more than one judge to meet and make rules and institute measures to promote justice and expedite business.

No question is raised and none can be raised but that Branch No. 8 had the power and the jurisdiction to investigate the conditions which the Churchill petition alleged existed in Milwaukee county. Attached to the petition of the attorney general and made a part thereof is an opinion by Judge Aarons which discloses some of the facts established by the evidence taken in the investigation under the Churchill petition. This opinion presents so clear a picture of the baneful effect of the activities of "ambulance chasers" and "claim adjusters" as to leave no doubt that the court ought to have taken jurisdiction and to have proceeded with an investigation for the purpose of eliminating unprofessional practices and of preventing the use of the processes of the courts in such manner as to interfere with and obstruct the functions of the courts whose calendars are clogged with champertous cases brought under contracts procured by "ambulance chasers."

(3) The affidavit made by *Mr. Rubin* charged that the three lawyers who, at the request of the court, were conducting the investigation of the matters presented by the Churchill petition were wilfully and deliberately conspiring to commit a fraud upon the court by withholding the whole truth and by wilfully and deliberately withholding information which would have proven the untruth and the falsity of each and every one of the accusations made.

When such a charge was made against those who were conducting the investigation before the court, while the investigation was still in progress, the court not only possessed the power, but it was charged with the imperative duty, of at once determining whether the processes and the powers of the court were being prostituted to such base pur-

poses and whether the three members of the bar who were conducting this investigation were engaged in a conspiracy to wilfully and deliberately suppress the truth, while posing as friends of the court engaged in an endeavor to maintain the ideals of their profession.

The court had jurisdiction to conduct such investigation for the dual purpose of determining whether members of its bar should be disciplined and whether it ought to proceed with its investigation with the aid of those who were alleged to be guilty of this fraud upon the court. Very clearly the court should promptly determine whether this investigation was prompted by malice, hatred, and envy and prosecuted for base and ulterior purposes. In determining these questions the court had the power to summon witnesses and to compel them to testify under oath. In its investigation of this question it was entitled to the hearty co-operation of every member of the bar, and especially of that member who had made these serious charges under oath, who should have been the first to voluntarily offer his sworn testimony to substantiate these charges, if they were true.

The court has the inherent power to do whatever was necessary to conduct its investigation. Among its inherent powers was that of punishing for contempt those who refused to be sworn and to give testimony. Clearly the court had both the jurisdiction and the power to adjudge *Mr. Rubin* guilty of contempt. That fact appeared from the papers made a part of the petition for the writ of *habeas corpus*. Upon ascertaining this fact from an examination of the petition and its accompanying papers, the judge of Branch No. 1 should have refused to issue the writ of *habeas corpus,* because "it would be idle to issue the writ of *habeas corpus* in a case where the court must, in the end, remand the prisoner." *In re Rosenberg,* 90 Wis. 581, 589, 63 N. W. 1065, 64 N. W. 299. The court should "not go through the idle ceremony of bringing before it the

petitioner, when he must be immediately remanded to his former custody." *In re Griner,* 16 Wis. 423, 430.

(4) *Mr. Rubin* and his counsel have evidently misconceived the nature of the proceeding in which he was adjudged guilty of contempt. The entire record presented by the petition for the writ and the return establishes the fact that all proceedings leading up to the entry of the contempt judgment were had in the investigation conducted under the Churchill petition. This was not a criminal proceeding against *Mr. Rubin. Mr. Rubin* was not asked to incriminate himself. If in the course of his examination questions were asked that tended to incriminate him, *Mr. Rubin* could then claim his privilege. There was nothing in the proceeding that partook of a criminal nature in any way until *Mr. Rubin* was found guilty of a criminal contempt.

There is no necessity for any formal charge against one who is guilty of a criminal contempt committed in the immediate view and presence of the court. *In re Rosenberg,* 90 Wis. 581, 587, 63 N. W. 1065, 64 N. W. 299. *Mr. Rubin* appeared voluntarily and informed the court that he was sufficiently advised as to the nature of the proceedings and that he was ready to give the information that he had and requested the privilege of occupying the witness stand while making his statement. But when the court requested him to be sworn he persistently refused to comply with the directions of the court.

Under the circumstances presented by the petition and return, it is clear that Branch No. 8 had jurisdiction to enter the contempt order. The conclusion necessarily follows that Branch No. 1 had no power to release *Mr. Rubin* on *habeas corpus* and that the court should have refused to issue the writ, or, the writ having been issued, should have quashed the writ and remanded *Mr. Rubin* to the custody of the sheriff.

The members of the bar who, at the sacrifice of their

personal and professional business, aided the court in its investigation and in the subsequent proceedings are entitled to commendation. It is only by the constant and unselfish devotion of time and energy on the part of both the bench and the bar that the ideals of an honorable profession can be maintained in these days when the tendency is to commercialize all callings. The fact that so many members of the Milwaukee bar have put aside their own professional engagements to devote their time and energy to aiding the courts in stamping out abuses that have crept into the practice of their profession gives the strongest assurance that the members of the bar still cherish the high ideals of their profession.