STATE, Plaintiff in error, vs. KIEFER, Defendant in error.

*December 3, 1928—January 8, 1929.*

*Spencer Haven* of Hudson, special counsel, for the State.
*Walter D. Corrigan, Sr.* of Milwaukee, for the defendant.

OWEN, J. On May 9, 1928, the Board of State Bar Com-. missioners filed with this court charges of misconduct against Julius E. Kiefer, an attorney of this court. Such charges contained two counts. The first count recites that on the 14th day of September, 1926, one Patsey Ben Mc-Fagins was run over by a train of the Chicago & Northwestern Railway Company at or near the city of Milwaukee, resulting in the loss of his left arm above the elbow and his left foot above the ankle; that about five days after the accident, when the said McFagins was in the hospital suffering great bodily pain, the defendant, through his brother, Frederick J. Kiefer, procured a contract from said McFagins to prosecute his claim against the railroad company upon a contingent fee of fifty per cent. of the amount received or recovered; that the contract was procured by placing it in front of the claimant and asking him to sign, without any explanation of the terms of the contract and without his reading it; that later the claim was settled for the sum of $600, $300 of which was retained by the defendant Kiefer; that the settlement was made hurriedly, without any action having been instituted, and, apparently, with little consideration given to the seriousness of the injuries.

The other count charges the defendant with having pursued, for at least two years prior to the month of April, 1927, an organized system of soliciting personal injury cases, commonly known as "ambulance chasing."

The defendant made answer to the charges, and, in deference to the practice suggested by the statute, the issues so formed were referred to Claire B. Bird, Esq., an attorney of this court, to take and report the evidence, with his findings and recommendations thereon. The report of the referee has been filed with this court. Some additional findings have been requested, but as they have no material bearing upon the final disposition of the matter, the report of the

referee will be confirmed as to the findings of fact therein contained.

With reference to the first count, the referee finds the making of the contract with McFagins substantially as alleged in the complaint, and further finds that "defendant saw the claim agent twice, interviewed plaintiff (McFagins) to get such further facts as he could, saw no opportunity to make a valid claim against the railway company, and after some negotiation agreed on a settlement for $600, which McFagins approved. It was accordingly closed prior to October 27th, and McFagins thereafter received his $300. McFagins did not appreciate the meaning of the writing he signed on September 18th, but realized it later and accepted $300 as his share. Defendant retained the other $300, of which he was obliged to (and presumably did) turn over half to his brother according to their general arrangement to divide equally the proceeds of such cases."

With reference to the second count the referee finds, in effect, that the plaintiff was admitted to the bar in July, 1907, since which time he has been associated with a number of firms, practicing alone during the last two years; that he and his various firms had a considerable personal injury practice, conducted almost entirely upon contingent fees, which, according to the general custom in Milwaukee, was from a third to a half of the amount collected; that during all this time there existed in Milwaukee numerous persons engaged in the business of soliciting such injured persons for their cases, receiving as their compensation a share of the contingent fee of the lawyer to whom they gave the case. The business was so aggressive that nearly all the personal injury cases were obtained by such a solicitor, who turned them over to the lawyer under such arrangement; that Frederick J. Kiefer, a brother of defendant, was such a solicitor for the last twenty years. His business card called himself "Claim adjuster for the injured," and contained the state-

ment "If hurt and want damages collected, see me. No charge unless successful." In 1917 he copyrighted a twenty-page circular, which he used in soliciting such cases. This circular was intended to foment and induce litigation solely that the circulator and attorneys might profit thereby. He also used a form letter which went to prospects, containing his picture and on the margin pictures of different accidents. During the last two years the defendant and his brother occupied adjoining offices with a common waiting room and Frederick gave all the cases he got to the defendant. Defendant knew of the methods employed by his brother to get the business. He paid his brother half of his fees in such cases as compensation for his part of the work.

Defendant came gradually to realize that the practice of getting such cases through paid solicitors with whom the fee was divided was contrary to legal ethics. He continued the practice, probably under the spur, as he thought, of necessity, until the question became acute by the proceedings referred to in *State ex rel. Reynolds v. Circuit Court,* 193 Wis. 132, 214 N. W. 396, but his earnings were barely enough to support himself and family very modestly. When the circuit judges in that proceeding asked for voluntary full disclosure by attorneys who had engaged in such practices, defendant was the first to respond, made a frank statement of his position, reported the cases he then had pending under such contract, and has discontinued taking cases so obtained. He now has some unsolicited cases, which he does not wish to proceed with until this proceeding is closed. Defendant has a very good reputation for honesty and fair dealing with his clients and others.

With reference to the first count the referee reports as follows: The contract (so called) with McFagins authorized defendant to retain as his fee only such sum as was equitable, all things considered. I think he in fact retained altogether too much, but still acted in good faith, believing he

was justified in so doing. Any remedy in that respect may well be left to Milwaukee county, which, since McFagins is a public charge, is primarily interested in the financial remedy.

We approve and confirm this recommendation and nothing further will be said with reference to this count.

With reference to the second count, the referee stamps the practice of solicitation and fee-splitting as offensively unprofessional, against public policy, in violation of good legal morals, and calling for substantial discipline. The referee further says:

"Notwithstanding his unethical conduct, I do not think the defendant is of a character unfit to practice law, and I see no reason to question his future uprightness. The fact that there may be abuses connected with personal injuries cases other than solicitation by lawyers, or that there may be certain other more genteel methods of soliciting business generally, which also call for condemnation, cannot prevent dealing with the particular offense here charged. The defendant's frank response to the circuit judges, his permanent discontinuance of such conduct, and the apparent prior general acquiescence in that locality toward such practices, persuade me that leniency will not be inconsistent with the public interest."

He recommends that a fine of from $500 to $1,000 be imposed, and that the defendant be suspended from practice for a period of ninety days after the fine and costs of this proceeding are paid.

It requires no elaboration at this time to demonstrate that the practice of soliciting business on the part of attorneys, as well as the splitting of fees, constitutes the most abominable and offensive professional misconduct. It is condemned by Canons 27 and 28 of the Canons of Professional Ethics adopted by the American Bar Association in 1908. It was most vigorously condemned in *Ellis v. Frawley,* 165 Wis. 381, 161 N. W. 364, decided in 1917. The solicitation of business was declared by the legislature of 1927 to be

grounds for disbarment (sec. 256.29 (2), Stats.), while the same legislature made fee-splitting by attorneys a criminal offense. Sec. 256.45.

The punishment that should be visited upon an attorney for unprofessional conduct should be influenced by the following considerations, and perhaps others: (1) The effect that it may have upon others with a view of stamping out the evil; (2) the probability of reform or regeneration of the offending attorney; and (3) punishment.

1. Were it not believed that other recent potent influences had gone a long ways towards stamping out the evils of so-called "ambulance chasing" and fee-splitting on the part of attorneys, we should feel that this consideration called for most rigorous dealing with the defendant. The influences we have in mind may be briefly referred to as follows: It seems that for many years an organized system of "ambulance chasing," so called, has insidiously and gradually grown up in Milwaukee county, and perhaps other counties of the state. During this time certain attorneys were in the habit of sending out their runners much as a commercial institution sends out its drummers to drum up business. They regarded the temple of justice as a mart of trade. This practice met with no combined or effective protest on the part of the bar generally. Those engaging in these practices were eligible to membership in local and state bar associations. The remuneration from such practices, and the safety with which they could be indulged, invited the weaker and more sordid members of the profession to join the ranks. The practice grew and developed until it became a disgrace and a scandal to the administration of justice. This finally resulted in the filing of a petition, signed by various members of the Milwaukee bar, which has come to be known as the Churchill petition, with the circuit court for Milwaukee county, praying for an investigation on the part of that court into such practices in that county. The nature of these proceedings

is revealed in *State ex rel. Reynolds v. Circuit Court,* 193 Wis. 132, 214 N. W. 396, and *Rubin v. State,* 194 Wis. 207, 216 N. W. 513. The proceedings resulting from the filing of this petition re-awakened the professional conscience on the part of the bar of Milwaukee county and the state. It focused public attention upon these practices, and resulted in the legislation by the legislature of 1927 to which reference has already been made. It is believed that for the present at least the practice has been substantially abandoned, and that any attempt to resume the practice will meet with emphatic professional condemnation, and prosecution under the statute. It therefore seems that we need not give much consideration in prescribing penalty to its effect upon the profession generally.

2. As to the reformation of the defendant: It fairly appears that the defendant was somewhat conscience stricken with reference to these practices for some time before the filing of the Churchill petition. If we were to discount his own declarations with respect to this entirely, his prompt appearance before the circuit judges, with the complete and open disclosure of his own participation in such practices, is an overt act tending to indicate his previous disquietude of mind, and to corroborate his own declarations in that behalf. We think that a suspension is not necessary to give time for reformation of the defendant. We are satisfied that he is fully convinced of the unprofessional conduct involved in these practices and that he is not likely to resort to them again.

3. Under these circumstances we are disposed to be as lenient with the defendant as may be consistent with an effective judicial disapproval of his confessed misconduct. One who has been guilty of such open and shameless abandonment of professional rectitude should suffer some substantial punishment. Upon mature and deliberate consideration, we conclude that the minimum punishment that cannot

be construed as an implied judicial indorsement of defendant's misconduct, even taking into consideration all of the mitigating circumstances urged in behalf of defendant, many of which are not here recited, is the judgment now pronounced:

*By the Court.*—It is ordered and adjudged that the defendant Julius E. Kiefer pay so much of the costs of this proceeding as is represented by the reporter's fees, hereby fixed and determined at the sum of $168.65, and the referee's fees and costs, hereby fixed and determined at the sum of $222.75; that he be suspended from the practice of the law until the 8th day of April, A. D. 1929, and until he furnish to this court evidence of the payment of the costs herein ordered to be paid by him.