STATE, Plaintiff, vs. KERN, Defendant.

*November 15—December 9, 1930.*

*Spencer Haven* of Hudson, counsel for the Board of State Bar Commissioners, for the plaintiff.

*Bernard V. Brady* of Milwaukee, for the defendant.

FRITZ, J. Briefly summarized, the material facts, as found by the referee, are as follows: Defendant, at the age of twenty-eight years, was admitted to practice on August 15, 1927. Prior to December 16, 1928, defendant was informed by David Fishkin, a meat dealer, that he had paid the Milwaukee county sheriff, then in office but who had not been re-elected, $1,000 a year to secure the order for meat used at the county jail, and which was paid for by the county. On December 16, 1928, defendant, at the in-

stigation of Fishkin, informed the sheriff-elect of Milwaukee county that Fishkin would pay $1,000 to the sheriff-elect to get the contract which he was to make for meat for use at the county jail. The sheriff-elect then refused to consider the proposition. On February 25, 1929, after he was in office, he invited defendant, and during a social visit inquired whether the proposition was still open. The following day defendant went to Fishkin and received from him $200 to give to the sheriff and inform him that the balance would be paid bimonthly until $1,000 were paid. Defendant went to the sheriff and gave him the $200 in cash. The sheriff then declared he was going to "get" his predecessor in office, and, at the sheriff's request, the defendant accompanied the sheriff to the district attorney's office. There the defendant told the truth, and endeavored to induce Fishkin, who had been called, to do likewise. Defendant also turned over to the district attorney the $200 which the sheriff had returned to defendant. Prosecutions charging attempted bribery were instituted against Fishkin and defendant. Defendant, after having been admonished by Fishkin's attorney to be careful about testifying against Fishkin, and advised to retain counsel and seek advice in that respect, retained experienced counsel, and on his advice declined to testify at Fishkin's preliminary hearing. That refusal resulted in a dismissal of the charge against Fishkin. Subsequently, a jury acquitted defendant of the charge of attempted bribery, on a trial at which defendant truthfully stated his part in the transactions with Fishkin and the sheriff. Although the referee made no finding as to the fact, it appears from the testimony of counsel who defended defendant at that trial that the jury was impressed by counsel's argument that the sheriff had merely used defendant for the purpose of coercing disclosures on which to "get" the former sheriff. Several witnesses of excellent reputation and judgment testified as to the good reputation of the

defendant and their belief that his character is such that he will not repeat such misconduct.

The referee recommended that the defendant be required to pay the fees of the reporter, referee, and clerk of this court, and that unless the same are paid within sixty days the defendant be disbarred for one year. Preliminary to that recommendation the referee said:

"In my view, the case is one requiring merely disciplinary measures. Irrespective of whether the defendant committed a crime in a legal sense, his conduct was unjustifiable; he yielded to temptation. I am inclined to the belief that what he did was done thoughtlessly and without serious thought of consequences;—he had a moral lapse. He is truly penitent and seriously regrets that he permitted himself to become involved in this unfortunate affair. . . .

"To my mind the vital question in this case is whether the defendant has the necessary character to resist temptation in the legal profession. Men in high standing in Milwaukee who have known this young man for a long time testified to his excellent standing and exemplary conduct before and after he became involved in this affair. It is in evidence that it is generally believed by the bar of Milwaukee county that the defendant has the necessary character qualifications to become a useful member of his profession. Careful observation of him on the witness stand and throughout the trial of this action in connection with the testimony in the case convinces the referee that if permitted to continue in practice he will become an honorable and useful member of the bar.

"This case was admirably presented by counsel for the State Bar Commissioners and counsel for the defendant. The manner in which this case was tried should be of educational value to him. His conduct should not be wholly condoned."

The referee's findings are well based in the evidence and will be confirmed. We approve of his conclusion that "the case is one requiring merely disciplinary measures." But, after extended consideration, we cannot approve of his final recommendation that the matter be passed off by the mere

imposition of costs or a fine upon the defendant by way of punishment. Punishment of offending attorneys is neither the primary nor the ultimate purpose of disbarment proceedings under sec. 256.28, Stats., although it is an inevitable incident of a judgment of disbarment or suspension from practice. Punishment, as this court has but recently said, "is not and should not be a primary consideration of those having to deal with cases of this character." *State v. Barto,* 202 Wis. 329, 232 N. W. 553, 561. As was further said in that case:

" . . . The principal question is, Should a person so lacking in moral sense and appreciation of the relation of attorney and client as is the defendant in this case be permitted in the public interest to continue the practice of law? *In re Wall,* 107 U. S. 265, 2 Sup. Ct. 569, 27 Lawy. Ed. 552. A license to practice law or any profession ought by its very nature to be an assurance of the moral fitness and professional competency of the licensee upon which those seeking his services may rely. There is therefore a larger question involved than the interest of the defendant, important as that is."

In the case at bar we are concerned with a failure to conform to the standards applicable to the relation between a licensed attorney and the public "involving matters generally included within the broad term 'public policy.'" *State v. Barto, supra.* Bribery and attempted bribery are indicative of deplorable moral turpitude on the part of offenders. The corruption of public officers and employees, if not unequivocally condemned and emphatically checked, seriously imperils the safety and perpetuity of our institutions. Every normal adult appreciates the pernicious character and consequences of such misconduct, and no person who is sufficiently versed in the law to be licensed to practice can well plead ignorance. Every lawyer, even though he may not have read the canons of professional ethics, appreciates that—

"No client, corporate or individual, however powerful, nor any cause, civil or political, however important, is en-

titled to receive nor should any lawyer render any service or advice involving disloyalty to the law whose ministers we are, or disrespect of the judicial office, which we are bound to uphold, or corruption of any person or persons exercising a public office or private trust, or deception or betrayal of the public." 32d Canon of Professional Ethics of American Bar Association, adopted August 27, 1908, which continues as follows:

"When rendering any such improper service or advice, the lawyer invites and merits stern and just condemnation. Correspondingly, he advances the honor of his profession and the best interests of his client when he renders service or gives advice tending to impress upon the client and his undertaking exact compliance with the strictest principles of moral law. He must also observe and advise his client to observe the statute law, though until a statute shall have been construed and interpreted by competent adjudication he is free and is entitled to advise as to its validity and as to what he conscientiously believes to be its just meaning and extent. But above all, a lawyer will find his highest honor in a deserved reputation for fidelity to private trust and to public duty, as an honest man and as a patriotic and loyal citizen."

The referee attributed defendant's misconduct to a moral lapse, and stated that he believed that what defendant did was done thoughtlessly and without serious thought of consequences. Moral lapse may afford an explanation of defendant's conduct as a matter of psychology, but if so, we are concerned with such lapses on at least two occasions, with an intervening period of seventy days for mental reflection. His transgressions were not committed because of any sudden impulse or unexpected provocation. When questioned by the district attorney, defendant said that he realized that it was a criminal offense to offer a bribe of that kind, and that he would be disbarred upon a conviction for such an offense. Consequently, it cannot be rightly said that he acted thoughtlessly or without serious thought of consequences.

Under those circumstances, disciplinary measures should be at least coextensive with an effective judicial disapproval

of the confessed misconduct, so that they cannot be misunderstood or "construed as an implied judicial indorsement of defendant's misconduct, even taking into consideration all of the mitigating circumstances urged in behalf of the defendant." *State v. Kiefer,* 197 Wis. 524, 531, 222 N. W. 795.

In addition to the mitigating considerations stated in the portion of the referee's report quoted above, are the circumstances that, with the exception of the Fishkin transactions, the defendant does not appear to have been guilty of any misconduct; that notwithstanding the criminal and disbarment proceedings, his professional earnings have not decreased, and his clients are disposed to sympathize with him; and that in the disbarment proceedings he answered all questions with apparent frankness and candor, with no disposition to conceal or suppress the truth. Counsel for the State Bar Commissioners concedes that the defendant "seems to recognize his mistake and seems sincerely penitent therefor."

Under all of the facts disclosed by the record, we have concluded that the license of the defendant should be suspended for six months from December 9, 1930, in addition to the requirement imposed by the referee as to the payment of the fees of the reporter, referee, and clerk of this court.

*By the Court.*—It is ordered and adjudged that the defendant, Florian W. Kern, pay the fees of the reporter, referee, and clerk of this court within sixty days after taxation thereof; and that he be suspended from the practice of law until June 9, 1931, and thereafter until his license to practice law is restored and he is reinstated as a member of the bar of this court upon presentation of satisfactory proof of the payment of the foregoing costs of this proceeding, and that he has in the meantime desisted from the practice of law and is then of good moral character.