STATE, Plaintiff, v. WILLENSON, Defendant.

*September 3—October 1, 1963.*

For the plaintiff there was a brief and oral argument by *Rudolph P. Regez* of Monroe, counsel for the Board of State Bar Commissioners.

For the defendant there was a brief by *L. A. Willenson, pro se,* and oral argument by *Henry L. Arnold,* both of Milwaukee.

PER CURIAM. It appears that defendant attorney maintains an office for the practice of law, in one window of which appears his name and "Lawyer," and in an adjacent window a neon sign "Income Tax."

The first count upon demurrer raises the question whether the use of a neon sign "Income Tax" in the window of a lawyer's law office is unprofessional conduct.

The second count alleges that defendant's wife, conceded not to be a lawyer, conducts an income-tax business in the office. Defendant lawyer has an "interest" in the income-tax business, but apparently does not supervise it nor take professional responsibility for the work done. It is not claimed that defendant's wife exceeds the limitations within which a nonlawyer may properly assist patrons in preparing income-tax returns, nor is it claimed that it would be unlawful for her to advertise her business if it were carried on in a separate location. This count, upon demurrer, raises the question whether it is unprofessional conduct for a lawyer to permit a layman to solicit patronage for and carry on an otherwise legitimate income-tax business within the lawyer's office.

### As to Count I.

Solicitation of business by a lawyer is unprofessional conduct.[1] With very narrow exceptions, largely limited to

---

[1] Canon 27 of the Canons of Professional Ethics of the American Bar Association, adopted as a standard by the court in Rule 9 of the State Bar Rules; *State v. Kiefer* (1929), 197 Wis. 524, 222 N. W. 795; *In re Veach* (1953), 1 Ill. (2d) 264, 115 N. E. (2d) 257.

simple identification of the lawyer's office, proper use of professional cards and letterheads, and proper listing in directories, advertising in any form is deemed solicitation of business, and unprofessional conduct.[2]

Surely a neon sign calling attention to a law office as a place where a particular type of service is available is advertising which would be deemed unprofessional.

Defendant points out that people who are neither accountants nor lawyers do engage in the business of furnishing assistance in filling out income-tax returns. Within narrow limits such service may not be the practice of law and may be rendered by laymen.[3] Defendant argues that if, in fact, a lawyer performs income-tax service only within those narrow limits, he is, to that extent, engaging in a business which he is free to advertise.

We consider the argument untenable. One who seeks assistance from a lawyer in what appears to him the simplest sort of income-tax problem has a right to have the lawyer live up to all professional standards in furnishing such assistance. If the lawyer recognizes a legal problem not apparent to the client, the lawyer is bound to advise him concerning it. It would be impossible to draw a line between

---

[2] Canon 27, *supra,* footnote 1. *In re Neuman* (1915), 169 App. Div. 638, 155 N. Y. Supp. 428; Anno. 39 A. L. R. (2d) 1055, 1057; *State ex rel. Hunter v. Crocker* (1937), 132 Neb. 214, 271 N. W. 444; *In re Schwarz* (1916), 175 App. Div. 335, 161 N. Y. Supp. 1079; *Libarian v. State Bar* (1943), 21 Cal. (2d) 862, 136 Pac. (2d) 321; *Hartford County Grievance Comm. v. Cole* (1960), 22 Conn. Supp. 86, 161 Atl. (2d) 590.

[3] ". . . The preparation by a layman of tax returns on income derived principally from wages or salary has been held not to constitute the practice of law. . . ." 7 Am. Jur. (2d), Attorneys at Law, p. 98, sec. 79. ". . . Consequently, the courts hold that . . . preparation [of self-assessing tax returns], especially those of the simpler sort, is open to the laity." Anno. 9 A. L. R. (2d) 797, 801.

nonprofessional and professional income-tax service when rendered by a lawyer.[4]

Furthermore, the potentiality of a lawyer's income-tax work as a channel through which other legal business will come to the same lawyer is obvious. The income-tax client is very likely to take other legal problems to the lawyer who has prepared his tax returns, and after his death his family will probably take his estate to that lawyer for probate. To this extent, there would be little difference between permitting the lawyer to advertise his income-tax service and permitting him to advertise his services generally.

The supreme court of California has said in response to an argument similar to defendant's:

"If the petitioner should choose to continue as a practitioner at the bar of this state, he must comply with the standards of the legal profession. He should appreciate that when he is licensed to practice as an attorney at law, the professional services that he thus performs are performed by him as an attorney, whether or not some of the services could also be rendered by one licensed in a different profession. One who is licensed to practice as an attorney in this state must conform to the professional standards in whatever capacity he may be acting in a particular matter. (*Jacobs v.*

---

[4] "Where, however, the second occupation, although theoretically and professedly distinct, is one closely related to the practice of law, and one which normally involves the solution of what are essentially legal problems, it is inevitable that, in conducting it, the lawyer will be confronted with situations where, if not technically, at least in substance he will violate the spirit of the Canons, particularly that precluding advertising and solicitation. The likelihood of this is the greatest when the collateral business is one which, when engaged in by a lawyer, constitutes the practice of law, and when it is conducted from his law office. Thus there is apparently no doubt as to the impropriety of conducting, from the same office, a supposedly distinct and independent business of collection agent, stock broker, estate planning, insurance adjusters bureau, tax consultant, or mortgage service; . . ." Drinker, Legal Ethics, p. 221.

*State Bar,* 219 Cal. 59 [25 Pac. (2d) 401].) As a practicing attorney, he may not solicit employment nor may he advertise contrary to the rules." [5]

Although opinions of the Committee on Professional Ethics and Grievances of the American Bar Association, interpreting the Canons of Ethics, are not binding on this court, they are entitled to serious consideration. That committee has said:

"It is not necessarily improper for an attorney to engage in a business; but impropriety arises when the business is of such a nature or is conducted in such a manner as to be inconsistent with the lawyer's duties as a member of the Bar. Such an inconsistency arises when the business is one that will readily lend itself as a means for procuring professional employment for him, is such that it can be used as a cloak for indirect solicitation on his behalf, or is of a nature that, if handled by a lawyer, would be regarded as the practice of law. To avoid such inconsistencies it is always desirable and usually necessary that the lawyer keep any business in which he is engaged entirely separate and apart from his practice of the law and he must, in any event, conduct it with due observance of the standards of conduct required of him as a lawyer.

". . . The fact that a layman can lawfully render certain service does not necessarily mean that it would not be professional service when rendered by a lawyer. On the contrary, lawyers are frequently called upon to render such service for the very reason that it can be better rendered by a lawyer." [6]

The Committee on Professional Ethics of the State Bar of Wisconsin has said:

"There is nothing unethical in the practice of a lawyer engaging in an occupation entirely distinct from and unrelated

[5] *Libarian v. State Bar, supra,* footnote 2, p. 865.

[6] Opinion No. 57 of the Committee on Professional Ethics and Grievances of the American Bar Association, dated March 19, 1932

to his law practice *provided* that he in no way uses that occupation to advertise or 'feed' his law practice.

"However, it is a definite rule that the businesses of an advertised collecting agency, advertised adjustment and investigation or claims service, as well as advertised income tax services, are so inherently feeders for law practice, that a lawyer, his interests and offices may have no connection whatsoever with either.

"As to engaging in independent nonlegal businesses, other than the three prohibited as set forth in the foregoing paragraph, an ethical lawyer should very carefully conform to the following standards:

"1. The independent nonlegal business should be clearly and totally separated from the legal practice.

"2. Letterheads, cards and all advertising of the independent business must contain no reference or inference to the status of the individual as an attorney, nor as to legal services.

"3. It is desirable that the independent business have wholly separate locations from the legal practice, but if that is impossible the physical distinction should be made as clear and definite as the circumstances permit.

"4. There must be wholly separate telephone and other directory listings, as well as wholly separate telephones and telephone numbers.

"5. Signs of the other business must be wholly separate and to avoid the unethical 'feeder' possibility, it would seem grossly inappropriate to have a gaudy or flashy 'other' sign next to a modest shingle.

"The conclusion of the committee in this field is that the person who is licensed to the profession of being an attorney at law, must decide whether to practice his other business, if that is necessary, in accord with the ethics of the profession, or surrender his privileges as a lawyer." [7]

Defendant further claims that it is in the public interest to permit lawyers, particularly in large cities, to use signs to inform the public that they prepare income-tax returns, because, he says, the public is not sufficiently informed that

[7] 33 Wisconsin Bar Bulletin (June, 1960), p. 47.

many lawyers render such service and cannot readily tell which lawyers do and which do not. We reject this claim. If many people do not realize that lawyers make out income-tax returns, and if some are inconvenienced by going to lawyers who do not ordinarily render this service, we consider that such problems can better be solved by information programs carried on by professional organizations than by solicitation of work by individual lawyers.

All members of the court agree that defendant's use of a neon sign as described in Count I is unprofessional conduct.

### As to Count II.

As we understand the facts alleged, the office in question appears to be the office of defendant lawyer. Within it he carries on his law practice, and his wife carries on her separate nonprofessional business of preparing income-tax returns. There is no claim that there is any physical separation into two offices, one for the defendant's practice of law and the other for the income-tax business, nor of any other arrangement which would make it clear to members of the public that when dealing with defendant's wife they are not receiving services for which defendant is professionally responsible.

We deem it unprofessional conduct for a lawyer to participate in such an arrangement.

The Committee on Professional Ethics and Grievances of the American Bar Association has said in an opinion:

"In many instances the proper 'making out' of income tax returns will directly involve the rendition of legal services. Lawyers quite generally, as professional employment, in the practice of law, render income tax service to their clients. The style of name, 'Income Tax Service' under which the association here involved proposes to advertise and solicit contains no suggestion that its service is limited to the non-legal phases of preparing tax returns. This, taken in connection with the use of the lawyer's office as that of the

association, would inevitably result in the association becoming a soliciting feeder to the lawyer's law practice. The lawyer would thus become the beneficiary of such solicitation and advertising. This would violate *Canon 27.*" [8]

The Ethics Committee of the State Bar of Wisconsin has made the following statement:

"The committee continues to receive complaints and requests for opinions concerning window signs, shingles and other office signs.

"A lawyer may display a dignified window sign, shingle or door sign to designate his office. It should not be gaudy or in bad taste. There must be no neon signs or other illuminated lettering. A black or gold lettered sign is the customary usage. A lawyer may not advertise a collection agency, income tax service or claims service. Lawyers may not permit laymen who share office space with them to use window signs to display matter which would be prohibited to an attorney. One or two instances have been reported that a lay tax return preparer shares space with an attorney and displays a neon or red and white printed sign in the window of the same suite of offices which the lawyer occupies. The committee has held that this is improper. All advertising in the lawyer's office windows must conform to proper standards." [9]

We are aware that there are circumstances where it is economically advantageous for a lawyer to share office space, clerical help, and other items of expense with some other enterprise.

Where the lawyer chooses to make such an arrangement, the burden is on him to arrange it so that it will be obvious to the public that the law office and the other enterprise are totally independent, except for the sharing of space and the other expense. It must be clear that patrons of the other

---

[8] Opinion No. 234 of the Committee on Professional Ethics and Grievances of the American Bar Association, dated February 21, 1942.

[9] 35 Wisconsin Bar Bulletin (February, 1962), p. 30.

enterprise are not dealing with the lawyer, that he is not responsible for the services they receive, and if they require legal work as an incident of the business they do with the other enterprise, it must be clear that they are as free to consult or not to consult the lawyer as they are to consult or not to consult any other lawyer.

Defendant's maintenance of a neon sign in the window of his law office as alleged in Count I and his sharing of his office with an income-tax service, as alleged in Count II, constitute unprofessional conduct and subject him to discipline. Disbarment, or a substantial period of suspension would ordinarily be warranted in view of his refusal to remove the sign upon request. Plaintiff conceded upon oral argument, however, that this type of violation is frequent in the area where defendant practices, and his counsel informed us that the sign has been removed while this proceeding was pending. This proceeding appears to be in the nature of a "test" case and our decision will bring the impropriety of the practice to the notice of other offenders. Under these circumstances we deem a reprimand, and payment of costs, not to exceed $200, to be sufficient discipline.

It is ordered and adjudged, that the defendant be reprimanded for his conduct in maintaining a neon sign saying "Income Tax" in his office window, and in permitting a nonprofessional tax service over which he maintained no supervisory control to be carried on within his law office, and that he pay the costs and expenses of these proceedings, including the fees and disbursements of the attorney for plaintiff, but not to exceed $200.

DIETERICH, J. (*dissenting in part*). I agree with the majority's conclusions as to the impropriety of the neon sign in defendant's office window, and also with the imposition of costs under Count I of the complaint. However, I must respectfully dissent from that portion of the *per curiam*

opinion which holds that it is unprofessional conduct for an attorney to allow a separate income-tax service to be carried on from his office.

The *per curiam* opinion deems it unprofessional for an attorney to share office space, clerical help, and other expenses with another enterprise without first arranging things so that the public will know that the law office and the other enterprise are totally independent. This has the effect of making it unprofessional and unethical for a young attorney to accept an offer from, say, his father to share office facilities, clerical help, and other items of expense unless the father is a lawyer. I cannot agree with such a determination.

If the burden is on the attorney to arrange things so that this independence will be obvious to the general public, why is it not incumbent upon one challenging such an arrangement at least to allege that the law practice and separate enterprise are, in fact, not independent? Aside from an allegation pertaining to the presence of the neon sign, Count II of the complaint in the instant action alleges only that defendant's wife conducts an income-tax business in defendant's office space and that defendant has some undefined interest therein. There is no allegation that the two are not independent. Indeed, the majority characterizes the wife's income-tax service as a "separate business."

This court has deemed it proper to allow real-estate brokers to practice law "a little bit" simply because they have been doing so for a number of years.[1] It is apparent from the *per curiam* opinion in the instant case that lawyers are now prohibited from sharing office space with certain lay people unless certain vague and undefined standards are met. I cannot concur in the imposition of such restrictions upon the practice of law.

[1] *State ex rel. Reynolds v. Dinger* (1961), 14 Wis. (2d) 193, 109 N. W. (2d) 685, in which CURRIE, HALLOWS, DIETERICH, JJ., dissented.