STATE, Plaintiff, v. ARNESON, Defendant.

*October 6—October 31, 1967.*

620

For the plaintiff there was a brief and oral argument by *Rudolph P. Regez* of Monroe, counsel for the Board of State Bar Commissioners.

For the defendant there was a brief by *William J. Gleiss* of Sparta, attorney, and *Peter Berg* of La Crosse of counsel, and oral argument by *Mr. Gleiss.*

PER CURIAM. *State v. Roggensack* [1] held that the intentional failure to file income tax returns by a lawyer constitutes unprofessional conduct which subjects him to discipline. The reasons for this conclusion are fully set forth in that opinion and need not be repeated here. *Roggensack* overruled *State v. McKinnon* [2] wherein this court had determined like conduct on the part of a lawyer was not unprofessional conduct.

The discipline imposed in *Roggensack* was a reprimand and the payment of the costs and expenses. The prior ruling in *McKinnon* was one of the material factors that caused the court not to impose a suspension.

Subsequent to *Roggensack* this court rendered decisions in four more disciplinary proceedings in which lawyers were charged with unprofessional conduct for intentional failure to file income tax returns. [3] All four involved failures to file returns for years which antedated our decision in *Roggensack* rendered February 5, 1963. In keeping with the discipline imposed in *Roggensack* the four defendants in these four subsequent cases were reprimanded and required to pay all, or a portion, of the costs and expenses of the proceedings.

Apart from the instant proceeding, we have had but one other disciplinary proceeding involving an intentional

[1] (1963), 19 Wis. 2d 38, 119 N. W. 2d 412.
[2] (1953), 263 Wis. 413, 57 N. W. 2d 404.
[3] *State v. Bunge* (1963), 20 Wis. 2d 493, 122 N. W. 2d 369; *State v. Hartman* (1963), 20 Wis. 2d 499, 122 N. W. 2d 372; *State v. Hayes* (1963), 20 Wis. 2d 501, 122 N. W. 2d 373; *State v. Coleman* (1965), 27 Wis. 2d 282, 134 N. W. 2d 89.

failure to file income tax returns where any of the conduct in failing to file occurred subsequent to *Roggensack*. This was *State v. Howard*, St. No. 26, August Term, 1966. Howard had failed to file returns for the years 1960–1964; his net taxable income during these years ranged from $1,869.35–$8,355.44; and his delinquent taxes ranged from $4.96–$311.20. The referee recommended an eight-month suspension. The board moved this court for judgment in accordance with such recommendation. The defendant offered no opposition. On March 21, 1967, this court issued an order, without opinion, suspending defendant's license for three months.

This court imposed the discipline of suspension because it felt that the *Roggensack* and *Bunge Cases* had given the legal profession adequate warning that this might well be the kind of discipline that would likely be imposed for this type of professional misconduct. In *Bunge,* we stated:

". . . This is not to say that a reprimand will always be deemed sufficient for deliberate failure to file income-tax returns. . . ."[4]

Defendant Arneson received the same warning from *Roggensack* and *Bunge,* and evinced the same silent contempt of the tax agencies. Judge DOYLE termed his offense "a flagrant case of failure to file." Judge DOYLE noted defendant's pattern of delinquencies on the federal side. On the state side, in addition to the failures already mentioned, defendant failed to file his returns for 1959 and 1960 until on or about November 23, 1961. Despite a substantial income he has not yet paid his state income taxes for the years 1962–1965. Defendant has placed himself above the income tax laws of the United States and the state of Wisconsin.

He would have the court excuse him, because of his first wife's mental illness in 1959–1960, his own mental

---

[4] *Supra,* footnote 3, at page 498.

problems in 1966, and the press of his heavy law practice. Since, at least, 1959 he has taken the law into his own hands and "deferred" paying income taxes. His personal problems do not excuse such a long and consistent history of dereliction. Even busy men must take time off to pay taxes. Defendant's problems and entanglements on the federal side of the ledger in no way excuse his obligations to his state government. Defendant seems to treat the taxing arms of the federal and state governments as one obtrusive entity, which one must put up with and deal with only when one has to.

Since punishment is not the primary purpose of disciplinary proceedings, defendant's argument that he has already been punished is not conclusive.

Defendant also seems to assume that since his propensity not to file tax returns or pay taxes has no effect on his effectiveness in the courtroom, and since his clients feel the same way, his intentional violation of tax laws is not as grievous as another lawyer's might be. Defendant's skill as a trial lawyer does not allow him to relegate his responsibilities as a lawyer to merely serving his client's needs. As this court stated in *Roggensack*:

" 'Of all classes and professions, the lawyer is most sacredly bound to uphold the laws. He is their sworn servant; and for him, of all men in the world, to repudiate and override the laws, . . . argues recreancy to his position and office, and sets a pernicious example to the insubordinate and dangerous elements of the body politic. It manifests a want of fidelity to the system of lawful government which he has sworn to uphold and preserve.' " [5]

Defendant's license to practice law should be suspended. The quality of mercy may be strained, but the credulity of the public would be strained if defendant received any lesser form of discipline. A reprimand or fine would

---

[5] *Supra,* footnote 1, at page 45.

not be sufficient. In *State v. Bunge* this court quoted from *State v. Kern* [6] to the effect that:

" ' . . . disciplinary measures should be at least co-extensive with an effective judicial disapproval of the confessed misconduct, so that they cannot be misunderstood or "construed as an implied judicial indorsement of defendant's misconduct, even taking into consideration all of the mitigating circumstances urged in behalf of the defendant." *State v. Kiefer,* 197 Wis. 524, 531, 222 N. W. 795.' " [7]

Defendant's conduct is as blameworthy as Howard's. The fact that defendant is an older and more experienced lawyer, rather than detracting from the gravity of the offense, adds thereto. His license to practice should be suspended for a sufficient length of time to inculcate respect in him for the law, and to serve as a deterrent to his fellow members of the legal profession.

Therefore, it is ordered and adjudged, that the license of defendant Philip G. Arneson to practice law be suspended for a period of six months from the date of the entry of judgment herein and thereafter until reinstatment; that the costs of these proceedings, including the fees of the attorney for plaintiff, which costs aggregate $2,307.-03, shall be taxed and charged to defendant, and $1,000 thereof shall be payable not later than six months subsequent to the entry of judgment and the balance shall be payable not later than twelve months subsequent to judgment; and that after the expiration of five months defendant may apply for reinstatement of his license to practice law upon compliance with sec. 6, Rule 10, State Bar Rules.

HEFFERNAN, J., took no part.

---

[6] (1930), 203 Wis. 178, 182, 233 N. W. 629.

[7] *Supra,* footnote 3, at page 497.